UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GARY W. WRIGHT, | ) |
| | ) No. CV-09-383-CI |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, | ) AND DENYING PLAINTIFF'S |
| Commissioner of Social | ) MOTION FOR SUMMARY JUDGMENT |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (ECF No. 15, 25.)  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents Defendant.  The parties have consented to proceed before a magistrate judge.  (ECF No. 7.)  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Gary W. Wright (Plaintiff) protectively filed for supplemental security income (SSI) on January 14, 2002. (Tr. 99, 483.) Plaintiff alleged an onset date of January 1, 2001.  (Tr. 99.) Benefits were denied initially and on reconsideration.  (Tr. 56, 62.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R.J. Payne on November 13, 2003. (Tr. 475-508.)  Plaintiff was represented by counsel and testified at the hearing.  (Tr. 484-502.)  Vocational expert Deborah LaPoint and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

medical expert W. Scott Mabee, Ph.D., also testified. (Tr. 476-483, 502-07.) ALJ Payne denied benefits. (Tr. 316-22.) The Appeals Council granted review and remanded for additional findings. (Tr. 328-30.) A second hearing was held before ALJ Payne on May 9, 2006. (Tr. 511-39.) Plaintiff and medical expert Allen D. Bostwick, Ph.D., testified. (Tr. 512-38.) The ALJ again denied benefits. (Tr. 401-07.) The Appeals Council again granted review and remanded a second time for additional findings. (Tr. 422-24.) A third hearing was held before ALJ Hayward C. Reed on July 22, 2008. (Tr. 542-74.) Plaintiff, medical expert Ronald Klein, Ph.D., and vocational expert Karen Black testified. (Tr. 544-73.) ALJ Reed denied benefits and the Appeals Council denied review. (Tr. 11, 22-35.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts and record and will, therefore, only be summarized here.

At the time of the first hearing, Plaintiff was 45 years old. (Tr. 485.) Plaintiff has a high school diploma, but took primarily special education classes. (Tr. 486.) He has a limited work history, having worked for a short period at a pickle plant and for a short period putting CDs in covers, and has some vocational training in janitorial services. (Tr. 558-61.) Plaintiff was in prison for first degree rape of child from 1991 to 2001. (Tr. 202, 523.) Plaintiff worked in the kitchen while in prison. (Tr. 557.) He testified the only problem that prevents him from working is that he is a slow learner. (Tr. 524.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still

be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   404.1520(a)(4)(I), 416.920(a)(4)(I).

2       If the claimant is not engaged in substantial gainful activities,
3   the decision maker proceeds to step two and determines whether the
4   claimant has a medically severe impairment or combination of
5   impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If
6   the claimant does not have a severe impairment or combination of
7   impairments, the disability claim is denied.

8       If the impairment is severe, the evaluation proceeds to the third
9   step, which compares the claimant's impairment with a number of listed
10  impairments acknowledged by the Commissioner to be so severe as to
11  preclude substantial gainful activity. 20 C.F.R. §§
12  404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.
13  1. If the impairment meets or equals one of the listed impairments,
14  the claimant is conclusively presumed to be disabled.

15      If the impairment is not one conclusively presumed to be
16  disabling, the evaluation proceeds to the fourth step, which
17  determines whether the impairment prevents the claimant from
18  performing work he or she has performed in the past. If plaintiff is
19  able to perform his or her previous work, the claimant is not
20  disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
21  this step, the claimant's residual functional capacity ("RFC")
22  assessment is considered.

23      If the claimant cannot perform this work, the fifth and final
24  step in the process determines whether the claimant is able to perform
25  other work in the national economy in view of his or her residual
26  functional capacity and age, education and past work experience. 20
27  C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482
28  U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9ᵗʰ Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9ᵗʰ Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9ᵗʰ Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 14, 2002, the application date. (Tr. 24.) At step two, he found Plaintiff has the following severe impairment: borderline intellectual functioning, a personality disorder secondary to pedophilia, and obesity. (Tr. 25.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 26.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a wide range of light work. The claimant would be able to perform work that would involve lifting or carrying up to 10 pounds frequently and up to 20 pounds occasionally, and he would be able to stand and/or walk for a total of 6 hours in an 8-hour workday with normal breaks. Additionally, the claimant would be able to perform simple, routine, and repetitive tasks that would not involve any contact with children, vulnerable adults, or the general public or ongoing interaction with supervisors or coworkers.

(Tr. 27.) At step four, the ALJ found Plaintiff has no past relevant

1   work.   (Tr.   33.)   After   taking   into   account   Plaintiff's   age,

2   education,   work   experience,   residual   functional   capacity   and   the

3   testimony   of   a   vocational   expert,   the   ALJ   concluded   there   are   jobs

4   that   exist   in   significant   numbers   in   the   national   economy   that   the

5   claimant   can   perform.   (Tr.   34.)   Thus,   the   ALJ   concluded   Plaintiff

6   has   not   been   under   a   disability   as   defined   in   the   Social   Security   Act

7   since   January   14,   2002,   the   date   the   application   was   filed.   (Tr.   35.)

8   **ISSUES**

9   The   question   is   whether   the   ALJ's   decision   is   supported   by

10  substantial   evidence   and   free   of   legal   error.   Specifically,   Plaintiff

11  argues   the   ALJ   improperly   considered   psychological   opinion   evidence

12  and   posed   a   hypothetical   to   the   vocational   expert   based   on   an

13  inadequate   functional   capacity   assessment.   (ECF   No.   16   at   13-26.)

14  Defendant   argues   the   ALJ   properly   considered   the   opinion   evidence,

15  determined   Plaintiff's   residual   functional   capacity,   and   determined

16  Plaintiff   is   not   disabled.   (ECF   No.   26   at   5-11.)

17  **DISCUSSION**

18  **1.   Psychological   Opinions**

19  Plaintiff   argues   the   ALJ   improperly   rejected   the   opinions   of   Dr.

20  Debra   Brown   and   Dr.   Islam-Zwart.   (ECF   No.   16   at   21-25.)   In

21  disability   proceedings,   a   treating   physician's   opinion   carries   more

22  weight   than   an   examining   physician's   opinion,   and   an   examining

23  physician's   opinion   is   given   more   weight   than   that   of   a   non-examining

24  physician.   *Benecke v. Barnhart*,   379   F.3d   587,   592   (9th   Cir.   2004);

25  *Lester v. Chater*,   81   F.3d   821,   830   (9th   Cir.   1995).   If   the   treating

26  or   examining   physician's   opinions   are   not   contradicted,   they   can   be

27  rejected   only   with   "clear   and   convincing"   reasons.   *Lester*,   81   F.3d   at

28  830.   If   contradicted,   the   opinion   can   only   be   rejected   for   "specific"

and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31.  Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

results).   Thus, case law requires not only an opinion from the
consulting physician but also substantial evidence (more than a mere
scintilla but less than a preponderance), independent of that opinion
which supports the rejection of contrary conclusions by examining or
treating physicians.   *Andrews*, 53 F.3d at 1039.

      **a.   Dr. Brown**

      Plaintiff argues the ALJ failed to adequately reject the opinion
of Dr. Debra Brown.  (ECF No. 16 at 23.)  In March 2001, Dr. Brown
completed a DSHS Psychological/Psychiatric Evaluation form.  (Tr. 220-
23.)  She diagnosed borderline intellectual functioning, pedophilia,
and a possible diagnosis of dementia.  (Tr. 221.)  Dr. Brown assessed
a severe limitation in the ability to exercise judgment and make
decisions, along with two other marked cognitive limitations and three
marked social limitations.  (Tr. 222.)

      Dr. Brown assessed Plaintiff again in January 2006 and prepared
a  psychological  evaluation  report  and  completed  a  DSHS
Psychological/Psychiatric Evaluation form.  (Tr. 347-53.)  Dr. Brown
diagnosed borderline intellectual functioning, cognitive disorder NOS
and pedophilia.  (Tr. 351.)  She assessed a severe limitation in the
ability to exercise judgment and make decisions, a marked limitation
in  the  ability  to  understand,  remember  and  follow  complex
instructions, and moderate limitations for three social factors.

      The ALJ summarized Dr. Brown's findings, accepted some of her
conclusions and rejected some of her conclusions.  (Tr. 30-31.)  The
ALJ agreed with Dr. Brown's assessment of a marked limitation in the
ability to understand, remember and follow complex instructions, but
concluded the evidence did not support a moderate limitation in the
ability to understand, remember and follow simple instructions.  (Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

30.)  The ALJ also rejected Dr. Brown's finding that Plaintiff has a marked difficulty learning new tasks and tolerating the pressures and expectations of a normal work setting and relating properly to supervisors and coworkers.  (Tr. 31.)  Additionally, the ALJ rejected Dr. Brown's opinion that Plaintiff would not be able to work without accommodation and that he would have a severe limitation in the ability to exercise judgment and make decisions.  (Tr. 31.)

One reason the ALJ rejected these limitations is that Dr. Brown's own test results from 2005 establish that Plaintiff would be able to understand, remember and follow simple job instructions and could have limited contact with those other than children, vulnerable others, or the public.  (Tr. 31.)  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  The ALJ pointed out that Dr. Brown's testing revealed Plaintiff was able to accurately name five past presidents and the current president; was oriented to date, place, time and year; was able to successfully complete serial 3s and spell the word "world" both forward and backward, and was able to remember 2 of 3 random nouns after a five minute delay.  (Tr. 28, 347.)  The ALJ also noted Dr. Brown's psychological testing reflected no indication of loosened associations or tangential or circumstantial thinking and Plaintiff's speech was free from indications of delusional thoughts or bizarre or atypical preoccupations.  (Tr. 29, 348.)  There were no indications of thought disorder or psychotic processes.  (Tr. 348.)  Furthermore, Plaintiff's score on the Trail Making Test Part A was normal, while the Part B score was impaired but only mildly so.  (Tr. 348.)  Plaintiff's

personality assessment inventory score was within normal limits, indicating no mood disorder. (Tr. 348.) These objective test results reasonably suggest that Plaintiff could understand, remember and follow simple job instructions and could successfully have contact with co-workers or supervisors. The ALJ's first reason for rejecting portions of Dr. Brown's opinion is specific, legitimate and supported by substantial evidence.

The ALJ also considered the objective test results of other examining psychologists in rejecting Dr. Brown's assessment regarding Plaintiff's ability to do simple tasks and social factors. (Tr. 31.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ pointed out that in February 2006, Dr. Bailey opined Plaintiff was capable of performing simple, repetitive tasks with few academic demands. (Tr. 28, 370.) Although Plaintiff's auditory immediate memory and immediate memory were in the borderline range, his delayed memory was in the low average range. (Tr. 369.) Dr. Bailey indicated Plaintiff's scores for general memory, working memory and visual immediate memory were in the average range. (Tr. 369.) In October 2007, Dr. Islam-Zwart recorded Plaintiff was able to read and obey a simple command, copy a geometric figure, and name the last six presidents of the Untied States. (Tr. 28, 447.) The evidence supports the ALJ's conclusion that Plaintiff is more capable of simple tasks than Dr. Brown determined.

With respect to social factors, Dr. Pollack noted that in December 2003 and January 2004, Plaintiff was cooperative and his thinking was logical and progressive. (Tr. 29, 372.) There was no

indication of hallucinations, delusions or unusual anxiety. (Tr. 372.) Dr. Bailey indicated that although Plaintiff appeared somewhat odd and had fairly poor verbal skills, he is very pleasant. (Tr. 370.) Dr. Islam-Zwart noted Plaintiff was somewhat uncomfortable interpersonally, but he appeared generally stable and positive. (Tr. 448.) The ALJ also pointed out other psychologists noted Plaintiff's thinking is logical and progressive, suggesting some ability to exercise judgment and make decisions. (Tr. 31, 372.) These factors constitute substantial evidence supporting the ALJ's conclusions.

Plaintiff argues Dr. Brown's opinion is consistent with other psychological opinions that Plaintiff has marked and severe work-related limitations. (ECF No. 16 at 23.) The only other psychologist who indicated a severe limitation is Dr. Islam-Zwart, whose opinion was properly rejected by the ALJ, discussed *infra*. Dr. Pollack indicated three moderate and two marked limitations, but Dr. Pollack's opinion was properly rejected by the ALJ and Plaintiff does not challenge that finding. (Tr. 33, 378-81.) Dr. Mabee testified at the first hearing that his only marked limitation on the ability to interact with the public applies only when children and vulnerable adults are involved. (Tr. 296, 480.) Dr. Bostwick testified at the second hearing that the marked and severe limitations in the record are not consistent with the diagnosis or with the record. (Tr. 516.) Similar to Dr. Mabee, Dr. Bostwick opined three marked limitations apply only when children are involved. (Tr. 396.) Dr. Klein indicated no marked or severe limitations. (Tr. 469-72.) Dr. Michael Brown identified no marked or severe limitations. (Tr. 250-51.) Dr. Bailey did not complete a check-box form indicating levels of

limitation, but noted moderate symptoms and assessed a GAF of 60.[1] (Tr. 370.)  The ALJ's conclusion that Dr. Debra Brown's opinion is inconsistent with other opinion evidence is supported by the record.

It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Other objective and opinion evidence cited by the ALJ indicate less severe limitations than those identified by Dr. Brown.  Furthermore, Dr. Brown's own test results suggest a lesser degree of impairment than Dr. Brown assessed. The ALJ cited specific, legitimate reasons supported by substantial evidence in rejecting some of the limitations assessed by Dr. Brown. As a result, the ALJ did not err.

**b.   Dr. Islam-Zwart**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Islam-Zwart.  (ECF No. 16 at 24.)  Dr. Islam-Zwart completed a psychological assessment and DSHS Psychological/Psychiatric Evaluation form on November 1, 2007.  (Tr. 442-48.)  Dr. Islam-Zwart diagnosed cognitive disorder NOS, pedophilia, and borderline intellectual functioning.  (Tr. 443.)  She assessed a severe limitation in the ability to exercise judgment and make decisions and marked limitations

---

[1]A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

with respect to all social factors. (Tr. 444.) She opined that Plaintiff is unable to work without significant accommodation. (Tr. 448.) The ALJ rejected Dr. Islam-Zwart's opinion for the same reasons portions of Dr. Brown's opinions were rejected: because Dr. Islam-Zwart's own findings were inconsistent with the level of limitations assessed and because Dr. Islam-Zwart's assessment of limitations is inconsistent with all other psychological testing. (Tr. 31-32.)

The ALJ pointed out that Dr. Islam-Zwart's examination showed Plaintiff was oriented and showed no signs of delusional thought processes. (Tr. 447.) Plaintiff appeared to exhibit adequate interest and motivation during the exam. (Tr. 447.) Plaintiff's scores on the Mini-Mental Status Exam, Parts A and B of the Trail Making Test, and the PAI were all within normal limits. (Tr. 447-48.) Plaintiff appeared generally stable and positive, although he presented with interpersonal oddities. (Tr. 448.)

Dr. Islam-Zwart's conclusion and assessed limitations were reasonably interpreted by the ALJ as inconsistent with the contents of her report. The results of Dr. Islam's-Zwart's objective testing were all within normal limits, yet Dr. Islam-Zwart concluded Plaintiff is "clearly" unable to work in the future. (Tr. 448.) Some of Dr. Islam-Zwart's observations support some limitations, such as poor eye contact, blunted affect, laughing out of nervousness, bad breath, minimal and basic speech, difficulty finding words, spelling errors, and yawning during the interview. (Tr. 447.) Plaintiff was unable to discern the meaning of a proverb. (Tr. 447.) Results of the PAI reflected some unusual responding, but nothing indicating clinical psychopathology. (Tr. 448.) He appeared uncomfortable interpersonally, and he appeared to see little need for change in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

behavior.   (Tr.  448.)   While  these  factors  are  appropriately considered  in  assessing  Plaintiff's  limitations,  the  ALJ's determination  that  they  do  not  justify  the  severe  and  marked limitations assessed by Dr. Islam-Zwart is reasonable, particularly in light of the other opinion evidence of record.  The ALJ's reason for rejecting  Dr.  Islam-Zwart's  opinion  is  specific,  legitimate  and supported by substantial evidence.

Furthermore, the ALJ concluded that Dr. Islam-Zwart's opinion is inconsistent with other psychological opinions and testing.  (Tr. 31-32.)  The consistency of a medical opinion with the record as a whole is  a  specific,  legitimate  reason  for  rejecting  the  opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  As discussed above, all three of the psychological experts concluded Plaintiff's limitations are generally in the moderate range, as did examining and reviewing psychologists Dr. Michael Brown and Dr. Bailey.  The ALJ's reasoning  is  supported  by  substantial  evidence  and  constitutes specific, legitimate reasons for rejecting Dr. Islam-Zwart's opinion.

**2.   Dr. Klein, RFC and Hypothetical**

Plaintiff  complains  that  although  the  ALJ  presented  the limitations  identified  by  Dr.  Klein  in  a  hypothetical  to  the vocational  expert,  the  hypothetical  did  not  include  the  functional limitations  assessed  by  Dr.  Klein.  (ECF  No.  16  at  22.)  Plaintiff also argues the ALJ improperly based the RFC on the 2001 findings of Dr.  Michael  Brown  rather  than  on  the  opinion  of  the  psychological expert,  Dr.  Klein,  who  testified  at  the  third  hearing  in  2008  and  had a  longitudinal  view  of  the  entire  record.  (ECF  No.  16  at  21.) Lastly,  Plaintiff  argues  the  ALJ  failed  to  cite  the  definition  of moderate,  marked  and  severe  limitations  on  the  DSHS  evaluation  form

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

which was the basis for some of the hypotheticals to the vocational expert.  (ECF No. 16 at 23.)

Dr. Klein testified at the third hearing and submitted a Mental Medical Source Statement form dated July 21, 2008.  (Tr. 469.)  Dr. Klein opined that the evidence supported diagnoses of dysthymic disorder, borderline intellectual function, and pedophilia.  (Tr. 547.)  He identified nine moderate limitations and included a written explanation as follows:

> Beyond the low verbal IQ, there are the weak academic skills interfering with work.  Age + poor work history have to be taken into account.  Obviously keeping him away from children is a necessity.  However it is not always easy to anticipate that since even jobs that are not child centered (e.g., hospital work, restaurant work) could periodically result in child contact.  Even if that issue could be adequately addressed, claimant's limited learning capacity, skill set, and depression present barriers to SGA.

(Tr. 471.)

The ALJ's hypothetical based on Dr. Klein's opinion stated:

> [Exhibit] 20F talks about beyond low verbal IQ there are weak academic skills interfering with work.  Age and poor work history have to be taken into account.  Obviously keeping away from children is a necessity.  However, it's not always easy to anticipate that since even jobs are not child-centered, e.g., hospital work, restaurant work, could personally or periodically result in child contact.  Even if that issue could be adequately addressed, limited learning ability, skill set and depression present barriers to SGA. . . . [T]here is no significant limitation with respect to carrying out simple or short and simple instructions.

(Tr. 569.)  The ALJ went on to list the nine moderate limitations identified by Dr. Klein, and the vocational expert testified that there are significant numbers of jobs available consistent with the hypothetical.  (Tr. 569-70.)

Plaintiff asserts the ALJ failed to include Dr. Klein's functional assessment as part of the hypothetical.  (ECF. No. 16 at 22.)  However, the transcript reflects that the ALJ recited Dr.

1  Klein's functional assessment almost verbatim along with his checkbox

2  assessment of moderate limitations.  (Tr. 569.)  There is no evidence

3  that Dr. Klein assessed any limitations other than those recited by

4  the ALJ to the vocational expert almost directly from Dr. Klein's

5  Mental Medical Source Statement form; nor does Plaintiff point to any

6  such evidence.

7       Plaintiff also seems to argue the ALJ improperly limited the

8  hypothetical based on Dr. Klein's opinion to those limitations

9  identified by Dr. Klein on the check-box Mental Medical Source

10  Statement form.  (ECF. No. 16 at 22.)  As suggested by the ALJ,

11  individual medical opinions are preferred over check-box reports.  *See*

12  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*,

13  722 F.2d 499, 501 (9th Cir. 1983).  The ALJ suggested at the hearing

14  that Dr. Klein's functional assessment does not help explain the

15  check-box limitations assessed by Dr. Klein.[2]  (Tr. 555.)  Dr. Klein

16  _____

17       [2]The ALJ said:

18       [I]t says on the form that, you know, the functional
        capacity assessment is where the expert explains the summary

19      conclusions.  And in this particular instance, this is at 5F
        [Dr. Michael Brown's report], the assessment was, there was

20      a specific discussion regarding understanding and
        remembering, and sustained concentration, and persistence.

21      And the conclusion was would be able to remember and execute
        simple instructions; able to sustain concentration on simple

22      repetitive tasks.  Otherwise, with respect to social
        interaction, it was that individual would have poor social

23      skills and the history of pedophilia, would need to work
        away from vulnerable others; capable of routine superficial

24      interaction with others; and then able to travel, take
        precautions, make plans.  And I don't know if your [Dr.

25      Klein's] functional assessment really was structured in a
        way these are --

26
        . . .
27
        -- in terms of, you know, addressing in the narrative

28      fashion, understanding and remembering, sustained
        concentration, persistence, social interaction and
        adaptation, or was it?

indicated he believed his narrative functional assessment was structured to address understanding and remembering, sustained concentration, persistence, social interaction and adaptation, but noted that others may interpret it differently. (Tr. 555.)  The ALJ gave Dr. Klein's functional capacity assessment to the vocational expert in the form of a hypothetical, and the vocational expert determined significant numbers of jobs are available in the national economy for someone with those limitations.[3]  As a result, even if the

_____

(Tr. 554-555.)

[3]Plaintiff notes that the ALJ commented during the hearing that "the functional capacity assessment should basically dominate over moderate limitations.  The number of moderates really isn't considered to be, under case law as well, the primary criteria in terms of whether or not there is a disability."  (ECF No. 16 at 22; Tr. 554.) The discussion between Dr. Klein and the ALJ is somewhat unclear, but the ALJ seems to be referencing Dr. Klein's earlier comments about his assessment of limitations, "My general sense with the moderate ratings on the MMSS form are that if a person has a substantial number of them . . . that the claimants who fall into those areas are more often than not deemed by the Court as meeting, ultimately achieving disability rating."  (Tr. 551.)  The ALJ is correct that a functional capacity assessment is the preferred basis for determination of disability, not the number or type of limitations assessed on a particular form.  *See* *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996); SOCIAL SECURITY ADMIN., PROGRAMS OPERATIONS MANUAL SYSTEM, DI 2451.060 (October 14, 2010), available at http://policy.ssa.gov/poms.nsf/lnx/0424510060.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

ALJ erred by failing to include a portion of Dr. Klein's assessed limitations in the hypothetical, and the court does not find that he did, any error would be harmless because the ultimate nondisability outcome does not change. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). Even if Dr. Klein's assessment was credited, the vocational expert determined that a person with the limitations identified by Dr. Klein could perform a significant number of jobs. As a result, Plaintiff would still be determined to be not disabled if the RFC contained the limitations assessed by Dr. Klein.

Plaintiff also suggests the ALJ should have adopted the opinion of Dr. Klein over the opinion of Dr. Michael Brown because Dr. Brown's opinion was generated in June 2001 while Dr. Klein's opinion was generated in 2008 and encompassed review of the entire record. (ECF No. 16 at 21.) However, as noted by the ALJ, the residual functional capacity determination was based on information in the psychological examination record, Plaintiff's acknowledged activities, opinions of state agency consulting psychologists, and the expert opinions of Dr. Mabee and Dr. Bostwick. (Tr. 33.) Although the wording of the RFC is consistent with Dr. Michael Brown's findings from 1991, rather than Dr. Klein's findings, the issue is whether the RFC is supported by substantial evidence in the record. The court concludes that it is. Additionally, the ALJ noted that all of Dr. Klein's assessed limitations are not supported by substantial evidence in the record, but pointed out that the vocational expert testified the same jobs would be available that are available with the RFC finding. Thus, the argument as to whether Dr. Brown's opinion or Dr. Klein's opinion

should be the basis of the RFC is moot.

Plaintiff's last argument is also without merit.  Plaintiff argues the ALJ improperly failed to define moderate, marked and severe according to the DSHS psychological evaluation when posing hypothetical questions based on those forms to the vocational expert. (ECF No. 16 at 23.)  The ALJ posed five hypotheticals to the vocational expert. (Tr. 564-68.)  None of the hypotheticals posed to the vocational expert was based on a DSHS psychological evaluation form. (Tr. 250-52, 277-79, 295-96, 395-98, 469-71, 565-68.)  The ALJ gave five hypotheticals to the vocational expert based on the opinions of Dr. Michael Brown, Dr. McRae, Dr. Mabee, Dr. Bostwick, and Dr. Klein.  All of the psychologists except Dr. Klein opined that Plaintiff could work, and the vocational expert determined that significant jobs exist in the national economy under all five hypotheticals, including the hypothetical based on Dr. Klein's assessment.  Plaintiff's attorney posed a hypothetical based on Dr. Islam-Zwart's opinion, which was the only hypothetical based on a DSHS psychological evaluation form. (Tr. 570.)  As discussed, *supra*, the ALJ properly rejected the opinion of Dr. Islam-Zwart.  Thus, the ALJ did not err by failing to discuss the definitions of terms on the DSHS psychological evaluation form because the ALJ did not submit hypotheticals to the vocational expert based on those forms.

Furthermore, Plaintiff's attorney asked about the definitions of moderate, marked and severe at the hearing.  The vocational expert indicated she considered "moderate" to mean there is a limitation, but the activity is not precluded. (Tr. 570.)  The ALJ followed up by asking the vocational expert to specifically consider the definitions of moderate, marked and severe as indicated on the Mental Medical

Source Statement form completed by Dr. Klein.  (Tr. 469, 571.)  The vocational expert indicated the definitions would not change her conclusion that work is available under all five hypotheticals given by the ALJ because they are essentially the definitions she used in formulating her opinion.  (Tr. 571.)  Plaintiff's argument is not supported by the record and the ALJ did not err by failing to define terms in the hypotheticals to the vocational expert.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.  Accordingly,

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED.**

DATED May 25, 2011.


_____
     S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE